IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

K.L.,[1]

      **Plaintiff,**

v.

KILOLO KIJAKAZI, Acting
Commissioner of the Social Security
Administration,

      **Defendant.**

Case No. 20-1287-DDC

## MEMORANDUM AND ORDER

Plaintiff K.L. seeks judicial review under 42 U.S.C. § 405(g) of the final decision by the Commissioner of the Social Security Administration denying her claim for Disability Insurance Benefits under Title II of the Social Security Act, as amended. Plaintiff has filed a brief asking the court to reverse the Commissioner's decision denying her claim and to remand her claim to the Commissioner for a new hearing before an administrative law judge ("ALJ"). Doc. 15 at 15. The Commissioner has filed a response brief, opposing plaintiff's request for judicial review and asking the court to affirm the Commissioner's decision. Doc. 16 at 18. This matter ripened for decision when plaintiff filed a reply brief on July 6, 2021. Doc. 17. Having reviewed the administrative record and the parties' briefs, the court affirms the Commissioner's decision denying plaintiff benefits. The court explains why, below.

---

[1]     The court makes all its Memoranda and Orders available online. Therefore, as part of the court's efforts to preserve the privacy interests of Social Security disability claimants, it has decided to caption such opinions using only plaintiff's initials.

I.      **Background**

On July 2, 2018, plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act. Doc. 13 at 199–201 (AR 195–97). She alleged disability beginning on September 1, 2015, based on peripheral neuropathy, lumbar spondylosis, degenerative disc disease, developing tunnel vision, anxiety, and migraines. *Id.* at 122, 199 (AR 118, 195). The Commissioner denied plaintiff's claim initially on November 19, 2018, *id.* at 122–26 (AR 118–22), and again denied the claim upon reconsideration on April 2, 2019, *id.* at 128–37 (AR 124–33). Plaintiff then requested a hearing before an ALJ. *Id.* at 138 (AR 134). The ALJ conducted a hearing on February 4, 2020, where plaintiff appeared and testified. *Id.* at 33, 38–54 (AR 29, 34–50).

On March 23, 2020, the ALJ issued a written decision concluding that plaintiff was not disabled, as the Social Security Act defines that term, from September 1, 2015, to the decision's date. *Id.* at 16–26 (AR 12–22). Importantly, the ALJ noted that on March 21, 2018, another ALJ considering plaintiff's earlier claim for Disability Insurance Benefits, had found that plaintiff was not disabled, as the Social Security Act defines that term, from September 1, 2015, to that decision's date. *Id.* at 16 (AR 12). Thus, the ALJ concluded, that decision was res judicata for the period of September 1, 2015, to March 21, 2018. *Id.* And so, the ALJ noted that her decision "only consider[ed] the time period from March 21, 2018 forward." *Id.*

Plaintiff then filed an appeal with the Appeals Council of the Social Security Administration. *Id.* at 195–98 (AR 191–94). On August 17, 2020, the Appeals Council denied plaintiff's request for review. *Id.* at 5–10 (AR 1–6). Having exhausted the proceedings before the Commissioner, plaintiff now seeks judicial review and reversal of the final decision denying her Disability Insurance Benefits.

## II.     Legal Standard

### A.     Standard of Review

Section 405(g) of Title 42 of the United States Code grants federal courts authority to conduct judicial review of final decisions of the Commissioner and "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's denial of benefits is limited to this question: Whether substantial evidence in the record supports the factual findings and whether the Commissioner applied the correct legal standards. *Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1177 (10th Cir. 2020); *see also Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014); 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" but it is "more than a mere scintilla[.]" *Noreja*, 952 F.3d at 1178 (quotation cleaned up). While the court "consider[s] whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," it neither reweighs the evidence nor substitutes its judgment for the Commissioner's. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation cleaned up). But the court also does not accept "the findings of the Commissioner" mechanically or affirm those findings "by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational." *Alfrey v. Astrue*, 904 F. Supp. 2d 1165, 1167 (D. Kan. 2012). When the court decides whether substantial evidence supports the Commissioner's decision, it "examine[s] the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision[.]" *Id.* "'Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere

conclusion.'" *Noreja*, 952 F.3d at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005)).

Failing "to apply the proper legal standard may be sufficient grounds for reversal independent of the substantial evidence analysis." *Brown ex rel. Brown v. Comm'r of Soc. Sec.*, 311 F. Supp. 2d 1151, 1155 (D. Kan. 2004) (citing *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). But such a failure justifies reversal only in "'appropriate circumstances'"—applying an improper legal standard does not require reversal in all cases. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting *Glass*, 43 F.3d at 1395); *accord Lee v. Colvin*, No. 12-2259-SAC, 2013 WL 4549211, at *5 (D. Kan. Aug. 28, 2013) (discussing the general rule set out in *Glass*). Some errors are harmless and require no remand or further consideration. *See, e.g.*, *Mays*, 739 F.3d at 578–79; *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161–63 (10th Cir. 2012); *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004).

**B.     Disability Determination**

Claimants seeking Disability Insurance Benefits bear the burden to show that they are disabled. *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009). In general, the Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner applies "a five-step sequential evaluation process to determine disability." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (discussing 20 C.F.R. § 404.1520 (governing claims for disability insurance benefits)). As summarized by the Tenth Circuit, this familiar five-step process proceeds in this fashion:

4

> Step one requires the agency to determine whether a claimant is presently engaged in substantial gainful activity. If not, the agency proceeds to consider, at step two, whether a claimant has a medically severe impairment or impairments. . . . At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition listed in the appendix of the relevant disability regulation. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [the claimant] from performing [the claimant's] past relevant work. Even if a claimant is so impaired, the agency considers, at step five, whether [the claimant] possesses the sufficient residual functional capability [RFC] to perform other work in the national economy.

*Wall*, 561 F.3d at 1052 (citations and internal quotation marks omitted); *accord* 20 C.F.R. § 404.1520(a)(4). The claimant must bear the "burden of proof on the first four steps," but the burden shifts to the Commissioner "at step five to show that claimant retained the RFC to 'perform an alternative work activity and that this specific type of job exists in the national economy.'" *Smith v. Barnhart*, 61 F. App'x 647, 648 (10th Cir. 2003) (quoting *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). This analysis ends if the Commissioner determines at any point that the claimant is or is not disabled. *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) ("If it is determined that a claimant is or is not disabled at any point in the analysis, the review stops.").

**III.    Analysis**

At step two of the disability determination process, the ALJ found that plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine with lumbar spondylosis, obesity, depression, anxiety, and idiopathic peripheral neuropathy. Doc. 13 at 18 (AR 14). But, the ALJ determined, at step three, that plaintiff doesn't meet one of the listed impairments in 20 C.F.R. pt. 404. *Id.* at 19 (AR 15). Instead, at step four, the ALJ determined that plaintiff has the RFC "to perform sedentary work as defined in" 20 C.F.R. § 404.1567(a). *Id.* at 20 (AR 16). Specifically, the ALJ found that:

5

> [T]he claimant can lift/carry 10 pounds occasionally and lesser weight frequently. [She] can stand and/or walk 2 hours or more in an 8-hour day, with normal breaks. She requires a cane to balance and ambulate. [She] can sit 6 hours or more in an 8-hour day, with normal breaks. She can occasionally climb ramps and stairs but never ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She can tolerate frequent exposure to extreme cold and hazards such as moving mechanical parts and working at unprotected heights. She can understand, remember, and carry out short and simple instructions.

*Id.*

Based on this RFC finding, the ALJ determined that plaintiff was unable to perform any past relevant work. *Id.* at 25 (AR 21). But, given plaintiff's age, education, work experience, and RFC, the ALJ concluded "there are jobs that exist in significant numbers in the national economy" that plaintiff can perform as delineated in 20 C.F.R. §§ 404.1569, 404.1569(a). *Id.* Thus, at step five of the analysis, the ALJ determined that plaintiff was not disabled, as the Social Security Act defines that term, from September 1, 2015, to the date of decision, March 23, 2020. *Id.* at 26 (AR 22).[2]

Important to this case, when making her RFC finding, the ALJ noted plaintiff's subjective reports of pain and her allegations of extreme limitation. *Id.* at 21–22 (AR 17–18). At the hearing, plaintiff alleged that she could not work full time. She testified that she had difficulty bending or moving because of back pain; that she walked with a cane; and that she could sit for no more than 30 minutes and stand for 30 to 40 minutes at a time before her pain became aggravated. *Id.* at 21 (AR 17). Plaintiff also testified that she could drive, but only for 15 minutes before her leg started to numb. *Id.* at 21–22 (AR 17–18). She also testified that she could perform personal care, *id.* at 22 (AR 18), though she testified that she only showered twice

---

[2] As discussed before, the ALJ concluded that she was bound by an earlier ALJ's finding that plaintiff was not disabled from September 1, 2015, to March 21, 2018. In other words, the earlier ALJ's finding was res judicata for that portion of plaintiff's alleged disability. And so, the ALJ noted that her decision "only consider[ed] the time period from March 21, 2018 forward." Doc. 13 at 16 (AR 12).

a week because it was difficult to wash her hair, *id.* at 44 (AR 40). The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" *Id.* at 22 (AR 18). But, the ALJ concluded, plaintiff's reports about "the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" *Id.*

Plaintiff's appeal focuses solely on that finding. In her view, the ALJ improperly discredited plaintiff's subjective reports of pain. Plaintiff argues that three aspects of the record supported her subjective reports of pain: (1) the diagnostic evidence, (2) her medical providers' examinations and findings, and (3) the various treatments she sought. And so, plaintiff contends, the ALJ's decision was not supported by substantial evidence. The court addresses these three aspects of the record, in turn, below.

  **A.**  **Diagnostic Evidence**

Plaintiff first argues that the ALJ failed to explain "how the MRI findings did not support [plaintiff's] allegations" and that the MRI findings "were not inconsistent with" plaintiff's subjective reports of pain. Doc. 15 at 9.

The ALJ summarized a September 2017 MRI of plaintiff's lumbar spine. It showed "mild worsening when compared with 2015 imagery, with mild to moderate neuroforaminal narrowing, and a bulge at L4–5." Doc. 13 at 22 (AR 18). Plaintiff contends this summary improperly downplayed the MRI's findings. In full, the MRI showed "[m]ildly worsened disc bulge with coexistent left paracentral/proximal foraminal disc protrusion at L3–4 resulting in left lateral recess narrowing and mild to moderate left greater than right neural foraminal narrowing." *Id.* at 548 (AR 544); *see also id.* at 483 (AR 479) (duplicate cited by plaintiff). The MRI also showed an "[u]nchanged disc bulge with coexistent right foraminal disc protrusion at L4–L5

7

resulting in moderate to severe right neural foraminal narrowing." *Id.* at 548 (AR 544). And finally, the MRI noted "[n]o significant spinal canal stenosis." *Id.*

Plaintiff's correct that the ALJ didn't note explicitly this "moderate to severe right neural foraminal narrowing." *Id.* But, the ALJ cited the MRI report containing that finding. *Id.* at 22 (AR 18) (citing Ex. B4F at 10–11 (AR 543–44)). The ALJ also discussed a medical examination by Dr. Sareb Alseoudi in June 2018—nine months after the MRI. *Id.* at 23 (AR 19). At that examination, plaintiff "present[ed] with intractable lumbosacral spondylosis with moderate pain and weakness in the legs[.]" *Id.* at 581 (AR 577). Dr. Alseoudi also noted that plaintiff's "neuropathy pain is fairly controlled with gabapentin[.]" *Id.* The ALJ noted both these findings, which, again, came after the MRI. *Id.* at 22 (AR 18) ("Dr. Sareb Alseoudi, the claimant's neurologist noted moderate symptoms of spondylosis, as well as neuropathy—the latter well controlled with Gabapentin."). Thus, the MRI findings and Dr. Alseoudi's examination indicating "moderate" and "mild" conditions, substantially support the ALJ's determination that plaintiff's subjective reports of severe limitations were inconsistent with the objective evidence in the record.

Plaintiff also faults the ALJ for "wholly fail[ing] to discuss the results of [plaintiff's] EMG[,] which showed moderate left peroneal neuropathy and evidence of mild S1 radiculopathy." Doc. 15 at 10 (citing AR 915). But there are two problems with this argument. *First*, the cited EMG was from October 2016—before the period of alleged disability that *this* ALJ was considering. *See* Doc. 13 at 919 (AR 915). As discussed before, another ALJ, who evaluated plaintiff's first application for disability insurance benefits, found that plaintiff was not disabled, as the Social Security Act defines that term, from the alleged onset date, September 1, 2015, to the date of decision, March 21, 2018. So, any diagnostic evidence from that period

8

can't bear on plaintiff's alleged disability during the relevant period before the ALJ in this appeal. And *second*, in any event, the "moderate" and "mild" results of the EMG are consistent with the ALJ's finding that plaintiff's symptoms were not as severe as she alleged.

In short, the ALJ properly considered the diagnostic evidence. And the ALJ's finding that plaintiff's reported level of pain was inconsistent with the diagnostic evidence is supported by substantial evidence.

### B.      Medical Examinations by Dr. Alseoudi, PA Martens, and Dr. Weis

Plaintiff next contends that the ALJ ignored the findings of the medical providers who had examined her over the years—Dr. Sarab Alseoudi, Physician's Assistant Jenny Martens,[3] and Dr. Ashley Weis. She argues that those findings bolstered her subjective reports of pain, and thus, the ALJ's discrediting her allegations was not supported by substantial evidence.

Plaintiff's argument essentially challenges the ALJ's finding that there was a disconnect between the objective medical examinations and the alleged severity of plaintiff's limitations, noted (1) by the providers' medical opinions and (2) by plaintiff herself at the hearing. The ALJ found that the providers' medical opinions about the severity of plaintiff's limitations were unpersuasive. In the ALJ's view, the providers' medical opinions were not supported and were inconsistent with their earlier findings after examining plaintiff. Plaintiff doesn't challenge the ALJ's conclusion that the medical opinions weren't persuasive. Instead, plaintiff argues the providers' underlying findings bolster *her* subjective reports of pain. And so, she contends, the ALJ erred by discrediting her subjective reports. But the ALJ's conclusion that the providers' findings didn't support their opinions applies with equal force to the ALJ's conclusion that those same findings didn't support plaintiff's subjective reports. So, the court will split its analysis of

---

[3] The ALJ's decision mistakenly referred to PA Martens as Jason Martens. *See* Doc. 13 at 23 (AR 19).

plaintiff's argument by focusing on (1) the medical providers' opinions about plaintiff's limitations, and then (2) plaintiff's subjective reports of those limitations.

### 1. Whether the ALJ Erred by Concluding that the Providers' Findings Didn't Support Their Opinions About Plaintiff's Limitations

For Disability Insurance Benefits claims filed after March 27, 2017, the Agency does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)" when making its determinations. 20 C.F.R. § 404.1520c(a); 20 C.F.R. § 416.920c(a). The primary factors for assessing medical source opinions are supportability and consistency and, where applicable, the agency must explain how it considered these factors. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2). The ALJ may discount "[m]edical evidence . . . if it is internally inconsistent or inconsistent with other evidence." *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) (citation and internal quotation marks omitted). But, the court may "not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation cleaned up).

Here, the ALJ explained why she disregarded each of the medical providers' opinions, which aligned with plaintiff's testimony at the hearing about her severe limitations.

*First*, the ALJ rejected Dr. Alseoudi's opinion because the opinion did not explain itself and the record didn't support it. In June 2018, Dr. Alseoudi opined that, because of plaintiff's condition, she could sit for no more than four hours in a workday, stand for less than two hours, would likely spend 20% of worktime off-task, and would miss work or leave early more than four days per month. Doc. 13 at 572–73 (AR 568–69). But the ALJ found that these "more extreme limitations on standing, off-task, and absences" were "not explained" by the record, "nor

10

supported by [Dr. Alseoudi's] own treatment notes[.]" *Id.* at 23 (AR 19). As discussed above, Dr. Alseoudi noted that plaintiff "present[ed] with intractable lumbosacral spondylosis with moderate pain and weakness in the legs[.]" *Id.* at 581 (AR 577). Dr. Alseoudi also noted that plaintiff's "neuropathy pain is fairly controlled with gabapentin[.]" *Id.* Confirming these treatment notes, the ALJ explained that the "medical imagery and examinations elsewhere in the record" also reflected moderate symptoms which were well-controlled, or at least alleviated, by medication and physical therapy. *Id.* at 23 (AR 19). Thus, there's substantial evidence to support the ALJ's finding that Dr. Alseoudi's opinion was unpersuasive.

*Second*, the ALJ rejected PA Martens's opinion for the same reason. In January 2020, PA Martens prescribed similarly extreme limitations for plaintiff. Much like Dr. Alseoudi, in PA Martens's opinion, plaintiff could sit for no more than four hours per workday, stand for less than two hours, would spend 20% of her workday off-task, and would miss work or leave early because of her condition more than four days per month. *Id.* at 1070–71 (AR 1066–67). The ALJ rejected this opinion as well, which "repeated many of Dr. Alseoudi's opinion[s]" because, like Dr. Alseoudi's opinion, PA Martens's opinion wasn't supported by her treatment notes or other evidence in the record. *Id.* at 23 (AR 19). Indeed, PA Martens noted in several places that physical therapy was improving plaintiff's condition, as long as plaintiff was continuing to do it. *Id.* at 931, 936 (AR 927, 932). PA Martens also noted that plaintiff's symptoms and condition were mild and moderate. *Id.* at 939, 944, 1066 (AR 935, 940, 1062). Thus, there's substantial evidence to support the ALJ's rejection of PA Martens's opinion about plaintiff's limitations.

*Third*, the ALJ also rejected Dr. Weis's medical opinion because it prescribed even more severe limitations than Dr. Alseoudi and PA Martens's opinions but, like them, lacked support in the record. As the ALJ noted, the record contains no treatment notes or findings from Dr. Weis

about plaintiff's physical limitations. *Id.* at 23 (AR 19). Indeed, the Commissioner highlights, Dr. Weis's treatment notes focus mostly on plaintiff's mental conditions and make no musculoskeletal findings that would support her opinion about plaintiff's severe physical limitations. *See, e.g., id.* at 558–61, 852–63 (AR at 554–57, 848–59). Thus, the ALJ did not err by determining that Dr. Weis's medical opinion neither was supported by her own treatment notes nor consistent with the overall medical evidence in the record.

In short, the ALJ explained her reasoning for rejecting the medical opinions. She cited the record and explained her finding that the opinions weren't supported by earlier treatment notes and were indeed inconsistent with the medical evidence in the record. That's what the applicable regulations require. *See* 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2). And, beyond that explanation, the court concludes that substantial evidence, discussed above, supports the ALJ's findings. Plaintiff may have wanted the ALJ to weigh the medical opinions differently. But that's not the court's role in this posture of review. *See Monique M. v. Saul*, No. CV 19-1345-JWL, 2020 WL 5819659, at *6 (D. Kan. Sept. 30, 2020) (explaining that the question before the district court is "whether the ALJ properly applied the regulations to determine the persuasiveness of the evidence based primarily on the supportability and consistency factors as applied to that evidence" and then "whether substantial evidence in the record (such relevant evidence as a reasonable mind might accept as adequate to support a conclusion) supports the ALJ's decision").

### 2. Whether the ALJ Erred by Concluding that the Providers' Findings Didn't Support Plaintiff's Subjective Reports About Her Limitations

Plaintiff's argument—that her providers' findings and treatment notes nevertheless support *her* subjective reports of pain—is unavailing for many of the same reasons. "Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset

12

such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quotation cleaned up). But, the court must ensure that the ALJ "closely and affirmatively linked" its credibility determinations "to substantial evidence" and didn't just announce "a conclusion in the guise of findings." *Id.* (quotation cleaned up). So "long as the ALJ sets forth the specific evidence [s]he relies on in evaluating the claimant's credibility, [s]he need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (quotation cleaned up). "[C]ommon sense, not technical perfection, is [the court's] guide." *Id.*

Applying these principles, the court concludes that substantial evidence supports the ALJ's finding that plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms are inconsistent with the record. The ALJ reviewed the record thoroughly when she discounted similar opinions from plaintiff's medical providers about the limiting effects of plaintiff's symptoms, as explained more fully above. The court will not substitute its judgment for the ALJ's conclusion that the objective medical evidence reflects moderate and mild conditions and symptoms that were controlled, or at least alleviated, by medication and physical therapy.

Nevertheless, plaintiff contends that the ALJ's "assessment of improvement relies on a selective reading of the record." Doc. 15 at 12. The court recognizes that an ALJ "may not 'pick and choose among medical reports, using portions of evidence favorable to h[er] position while ignoring other evidence.'" *Kellams v. Berryhill*, 696 F. App'x 909, 915 (10th Cir. 2017) (quoting *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004)). But the ALJ didn't do that. The ALJ noted plaintiff's progress and the improvement of some symptoms in June 2019 after plaintiff attended physical therapy. *See* Doc. 13 at 23, 931 (AR 19, 927). Plaintiff cites portions

13

of the record that she contends undermine the ALJ's finding. She highlights parts of the record where she reported a "little bit of difficulty" and, later, "moderate difficulty" with functional activities like getting in and out of the bath, walking between rooms, putting on socks and shoes, and squatting. *Id.* at 714–15 (AR 710–11); *id.* at 1001–02, 1038–39 (AR 997–98, 1034–35). But those reports come from January, February, and March 2019—while plaintiff was attending physical therapy and before her noted improvement in June 2019. The ALJ cited the parts of the record that plaintiff highlights, which also included notes of plaintiff's progress. *See id.* at 22–23 (AR 18–19) (citing Exs. B12F, B19F). And even accepting plaintiff's argument that her symptoms were fluctuating won't undermine the ALJ's finding. The ALJ didn't doubt that plaintiff had symptoms and that her condition caused those symptoms. Instead, the ALJ found that plaintiff's statements "concerning the intensity, persistence and limiting effects of those symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" *Id.* at 22 (AR 18). And there's substantial evidence to support that conclusion— notably the improvement of plaintiff's symptoms after physical therapy and the absence of medical findings supporting the extreme limitations plaintiff alleged.

### C.    Plaintiff's Treatment

Finally—and still on the topic of plaintiff's treatment—plaintiff contends that her attempts to relieve her symptoms through treatment "generally bolster, rather than detract from, the credibility of subjective complaints of pain." *Kellams*, 696 F. App'x at 915. But plaintiff places far too much weight on that language from our Circuit's decision in *Kellams*. In that case, the Circuit reversed and remanded because, among other things, the ALJ had downplayed the plaintiff's extensive treatment history and thus discredited his subjective reports of pain. *See id.* at 915–16. The ALJ there also discredited the *Kellams* plaintiff for not exploring various other

treatment options.  *Id.* at 916.  But the ALJ didn't do either one of those things here.  Instead, the ALJ found that plaintiff's treatments helped or stabilized her symptoms.  *See* Doc. 13 at 22–23 (AR 18–19).  And, when taken with the examination notes from plaintiff's providers that showed her symptoms were mostly mild or moderate, the ALJ's discrediting of plaintiff's subjective reports is supported by substantial evidence.

## IV.     Conclusion

After considering the briefs submitted and conducting its own review of the administrative record, the court concludes that substantial evidence supports the ALJ's decision.[4]

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Commissioner's decision denying plaintiff's application for Disability Insurance Benefits is affirmed.  The court directs the Clerk to enter Judgment under the fourth sentence of 42 U.S.C. § 405(g) affirming the Commissioner's final decision.

**IT IS SO ORDERED.**

**Dated this 31st day of March, 2022, at Kansas City, Kansas.**

> **s/ Daniel D. Crabtree**
> **Daniel D. Crabtree**
> **United States District Judge**

---

[4]     Plaintiff also asks the court to award her costs and attorney's fees.  Doc. 15 at 15.  The Equal Access to Justice Act provides that a court shall award "fees and other expenses" to "a prevailing party other than the United States[.]"  28 U.S.C. § 2412(d)(1)(A).  But, plaintiff didn't prevail, so the court denies her request for attorney's fees.